**Leo P. DIXON, Appellant,**

v.

**John W. MARTIN, as Trustee of Florida East Coast Railway Company, a corporation authorized to do business in the State of Florida, Appellee.**

**No. 17304.**

United States Court of Appeals
Fifth Circuit.

Nov. 5, 1958.

Walter A. Apfelbaum, Claude Pepper Law Offices, Claude Pepper, Miami, Fla., for appellant.

Jerry B. Crockett, Miami, Fla., Scott, McCarthy, Preston, Steel & Gilleland, Miami, Fla., for appellee.

Before RIVES, TUTTLE, and JONES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment sustaining a motion to dismiss the action based "on the ground that there is no substantial Federal question involved, no diversity of citizenship, and this Court lacks jurisdiction over the subject matter of the complaint."

**810**

The amended complaint is in two counts, the first predicated on the Federal Employers' Liability Act,[1] and the second on the common law of Florida. It is conceded that if the district court had any jurisdiction of the second count, it was under the doctrine of pendent or ancillary jurisdiction announced in Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. The question which we must answer is whether the first count, copied in the margin,[2] states such a "federal question"[3] as will support jurisdiction.

[1]. 45 U.S.C.A. § 51 et seq.

[2]. "Count 1.

"1. The Plaintiff is a resident of Dade County, Florida, and was employed by the Florida East Coast Railway Company for more than 35 years, until 1957, when he retired due to a total and permanent disability. The Defendant, (hereinafter called 'Railway Company'), is the trustee of the Florida East Coast Railway Company, a corporation which at all times relevant to this action was authorized to do business in the State of Florida, was doing business in Dade County, Florida, and was the owner and operator of a railroad in interstate commerce. This action arises under the laws of the United States, Title 45, Chapter 2, United States Code, Section 51, et seq., and under the laws of Florida.

"2. At all times relevant to this action, until his retirement in 1957, the Plaintiff was employed by the Defendant Railway Company in interstate commerce as a railroad conductor.

"3. For many years prior to 1957, Plaintiff paid a portion of his monthly wage to the Defendant Railway Company for the support of the East Coast Hospital Association, which said hospital was operated and staffed by the Defendant Railway Company for the medical care and treatment of its employees. Plaintiff submitted himself regularly to the hospital for physical examinations and as he was required and invited to do by the Defendant Railway Company. Plaintiff relied completely upon the skill and learning of the personnel of the said hospital to diagnose his physical ailments and to treat him properly or to prescribe proper treatment for him, and Defendant Railway Company held out and represented to Plaintiff at all times that its staff of physicians and hospital personnel were skilled and competent.

"4. Plaintiff alleges that he was forced to retire from his employment with Defendant Railway Company during 1957 due to total and permanent disability resulting from acute tuberculosis; that he has been completely unable to work and totally incapacitated due to that cause since June, 1955; that he received his last compensation for regular employment in April, 1955, but was not permanently retired until 1957.

"5. Plaintiff alleges that his total and permanent disability resulted directly and proximately from the negligent and careless failure of the Defendant Railroad, through its agents, servants or employees, to warn him that he had tuberculosis until 1953, when said disease had reached a chronic and incurable stage, or to exercise reasonable care in discharging its duty to Plaintiff to advise him of his condition and to prescribe treatment and care for him, when it knew Plaintiff had such disease as early as 1951, or before, and that proper treatment at that time would have arrested the disease or cured it and when it knew that Plaintiff did not know he had the disease and that he relied upon Defendant Railroad to diagnose it, advise him of it and to prescribe proper treatment for it.

"Plaintiff alleges that Defendant Railroad still has not told him when it first discovered that he had tuberculosis, nor does he yet know when Defendant Railroad first knew of it, but alleges upon information and belief that Defendant Railroad knew he had tuberculosis many years before 1953, and that the negligent failure of Defendant Railroad to warn him of such condition before 1953 was a direct and proximate cause of this total and permanent disability.

"6. As a direct and proximate result of such negligent acts or omissions, Plaintiff has become totally and permanently disabled; has required and will in the future require the hire of doctors, nurses, hospitals and medical care; has suffered and will in the future suffer great physical pain and mental anguish; has sustained a loss of earnings and a complete loss of his earning capacity, and a loss of his ability to lead a normal life.

"Wherefore, Plaintiff claims damages in excess of Three Thousand ($3,000.00) Dollars, exclusive of interest and costs, and demands a trial by Jury of all issues triable as of right by a Jury."

[3]. 28 U.S.C.A. § 1331.

The only claimed negligence was that specified in paragraph numbered 5 and, under its averments, which occurred in 1953. This action was commenced on November 19, 1957. 45 U.S.C.A. § 56 provides, "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." The appellant does not dispute the proposition that this is not a mere limitation pertaining to the remedy, but " * * * by the statute giving the cause of action, the lapse of time not only bars the remedy, but destroys the liability." [4]

Instead, appellant pins his hope of reversal on the fact that appellee's duty to him ceased only when he left its employ in June of 1955, within three years before the commencement of the action. He reasons that there may have been a continuous tort in the sense that the appellee allowed him to aggravate his tubercular condition, or else a tort of a successive or separate nature in that the appellee failed to provide him with adequate medical treatment, or negligently permitted him to return to work. He points particularly to the averments of paragraph number 4 of Count 1, quoted in footnote 2, supra.

We would have to indulge in pure speculation and conjecture to construe that paragraph to state a claim which accrued within three years before the commencement of the action. Nowhere was it made to appear in the district court, by pleadings, affidavits, reasonable inference, or otherwise, that there was any negligent act or omission occurring after 1953. It follows that Count 1 of the complaint affirmatively shows that the plaintiff was entitled to no relief under the Federal Employers' Liability

Act. "A federal question plainly devoid of merit will not sustain jurisdiction." [5]

A fortiori ancillary jurisdiction of the second count was not acquired.[6]

Affirmed.

---

4. Central Vermont R. Co. v. White, 1951, 238 U.S. 507, 511, 35 S.Ct. 865, 867, 59 L.Ed. 1433. See also, Damiano v. Pennsylvania R. Co., 3 Cir., 1947, 161 F. 2d 534, 535; Brassard v. Boston & Maine Railroad, 1 Cir., 1957, 240 F.2d 138; compare Simon v. United States, 5 Cir., 1957, 244 F.2d 703.

5. Ray v. Marion County, 5 Cir., 1934, 71 F.2d 509, 510.

6. Hart & Wechsler, *The Federal Courts and the Federal System,* p. 808, suggests that the dog would be wagged by his tail if plenary trial of an ancillary claim was compelled by a primary claim disposed of on the pleadings.