Jack Gage, Cheyenne, Wyo. and John D. Roven, Houston, Tex., for plaintiffs.

Joe M. Teig, Holland and Hart, Cheyenne, Wyo., for defendant.

Elmer L. **BECHTHOLDT** and Joseph N. Paravecchio, Plaintiffs,

v.

**UNION PACIFIC RAILROAD COMPANY, a corporation, Defendant.**

**C89–0052J, C89–0050J.**

United States District Court, D. Wyoming.

Oct. 3, 1989.

### ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALAN B. JOHNSON, District Judge.

This matter comes before this court on a combined motion for summary judgment, the defendant Union Pacific Railroad contending that the plaintiffs' claims are time barred. The plaintiffs brought this action under the Federal Employee's Liability Act (FELA), 45 U.S.C. § 51 et seq., and the Locomotive Boiler Inspection Act, 45 U.S.C. §§ 22–34, seeking recovery for hearing loss caused by repeated exposure to loud and excessive noise levels. This motion for summary judgment is directed only at the claims brought under FELA and for the reasons which follow, the defendant's motion will be DENIED.

### FACTS

Plaintiff Joseph Paravecchio was employed by the Union Pacific Railroad as a sheet metal worker for 42 years retiring in

1982. He stated in his July 6, 1989 deposition that after being around heavy equipment all day, his ears would feel "packed," that due to this he would have trouble hearing when he arrived home, but that he would be better when he woke in the morning. According to Mr. Paravecchio, he did not believe at that time that he had any permanent damage to his hearing. The deposition states that he was first confronted with his hearing problem in 1982 and the record indicates that he had a hearing examination because of this in early 1984. The conclusions of that examination as to the cause of Mr. Paravecchio's hearing problem are not presently before this court. Mr. Paravecchio states that he attributed his hearing difficulties to aging prior to learning in 1988 that several former co-workers had contacted attorneys regarding their claims of hearing loss against Union Pacific.

Plaintiff Elmer Bechtholdt was employed by the Union Pacific from 1943 to 1946, and from 1949 to 1959 as a machinist helper and as an electrician. He stated in his deposition that his ears would be ringing after he left work and for a few hours thereafter, but would be "all right again" the next morning. Mr. Bechtholdt visited the Cheyenne Hearing Clinic in early 1985 as a result of a hearing loss in his right ear. The medical report attached to his deposition notes that the cause was not immediately evident. Almost one year later, he again visited the clinic. The report from that examination indicates that Mr. Bechtholdt believed his hearing loss in his right ear was due to an automobile accident. Mr. Bechtholdt maintains that he made no connection between his hearing problem and his work at the Union Pacific until he learned of a screening for Union Pacific employees in 1989.

## DISCUSSION

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The court is required to examine all the evidence in the light most favorable to the non-moving party. *Barber v. General Electric Company*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). The moving party's burden may be met by identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265.

Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. That party must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Manders v. Oklahoma ex rel. Department of Mental Health*, 875 F.2d 263, 265 (10th Cir.1989) citing *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553.

Union Pacific moved for summary judgment on the ground that the plaintiffs' causes of action invoking FELA are time-barred. 45 U.S.C. § 56 provides that "no action shall be maintained under this act ... unless commenced within three years from the day the cause of action accrued."

The defendant bases its motion on excerpts from the plaintiffs' depositions indicating that each suffered temporary ringing or a "packed" feeling in their ears after completing work shifts. The defendant also contends that plaintiff, Paravecchio, communicated his knowledge of injury and its potential cause to his wife, and that plaintiff Bechtholdt had a medical examination identifying a hearing problem in 1985. The defendant contends that at least some of these events should have alerted the plaintiffs to the fact of injury to their hearing and its cause.

The plaintiffs' primary response is that neither man knew that they had suffered an injury while they were employed and

neither man connected his later hearing loss to his employment with the defendant until examined in 1989. The plaintiffs contend that the determination of the time of accrual of each cause of action is a genuine issue of material fact, thus precluding this court from finding as a matter of law that the defendant is entitled to summary judgment.

The issue for this court to decide is whether the plaintiffs' cause of action accrued more than three years prior to the filing of this action. For the following reasons, the court cannot make such a conclusion as a matter of law. A statute of limitations should not be applied so as to "bar a claimant before he has a reasonable basis for believing he has a claim." *Exnicious v. United States*, 563 F.2d 418, 420 (10th Cir.1977).

In *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the Supreme Court addressed the accrual of a cause of action for an occupational disease under FELA. In that case, the plaintiff Urie contracted silicosis due to repeated inhalation of silicate dust while employed at a railroad. In characterizing the effect of a rigid application of the FELA statute of limitations to such a disease, the court stated:

> It would mean that at some past moment in time, unknown and inherently unknowable, even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.... We do not think the humane legislative plan intended such a consequences to attach to blameless ignorance.

*Id.* 69 S.Ct. at 1024–25.

In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Court addressed the accrual of a cause of action under the Federal Tort Claims Act for medical malpractice. The plaintiffs argued that a cause of action should not accrue until the plaintiff knows of his injury and its cause, and knows that the party causing the injury is legally blameworthy. The *Kubrick* court rejected the last requirement of legal blame, and did not address knowledge of injury or causation.

*Urie* and *Kubrick* have been read together by several courts as establishing the so-called "discovery rule" in cases involving latent injuries and diseases.[1] The discovery rule provides for the accrual of a cause of action when the plaintiff knows or should know of both his injury and its cause.

In *Stokes v. Union Pacific Railroad*, 687 F.Supp. 552 (D.Wyo.1988), this court held that the discovery rule applied to a hearing loss claim.[2] *Stokes* differs from pure latent manifestations, and should not be applied in cases characterized as "ongoing repeated trauma with some latent manifestations." Instead the defendant contends that this court should apply the "time of event" rule. The court finds no support for this conclusion. Courts applying the "time of event" rule do so when the injured party had knowledge of or a reasonable opportunity to discover the critical facts of his injury and its cause. *See, e.g., Hicks v. Hines, Inc.*, 826 F.2d 1543, 1544–45 (6th Cir. 1987) (holding that "time of event" rule should be applied when "greater than de minimus harm is discernible at the time of the tortious event."); *Albertson v. T.J. Stevenson and Company, Inc.*, 749 F.2d 223 (5th Cir.1984); *Gregory v. Union Pacific Railroad Company*, 673 F.Supp. 1544, 1547 (D.Nev.1987).

The plaintiff characterizes this injury as a slowly progressive injury gradually eroding the

---

1. *See, e.g., Kichline v. Consolidated Rail Corporation*, 800 F.2d 356 (3d Cir.1986); *DuBose v. Kansas City Southern Ry. Co.*, 729 F.2d 1026 (5th Cir.1984); *cert. denied*, 469 U.S. 854, 105 S.Ct. 179, 83 L.Ed.2d 113 (1984); *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111 (D.C. Cir.1982); *Davis v. U.S.*, 642 F.2d 328 (9th Cir. 1981); *Stoleson v. U.S.*, 629 F.2d 1265 (7th Cir. 1980); *Hicks v. Hines, Inc.*, 826 F.2d 1543 (recognizing the discovery rule, but not applying it in a case where there was a noticeable, traumatic occurrence causing both obvious and latent injuries, noting that the injury was thus "legally cognizable"); *Young v. Clinchfield R.R. Co.*, 288 F.2d 499 (4th Cir.1961) (although prior to *Kubrick*, the Fourth Circuit applied *Urie* to require the knowledge of an injury and its cause).

2. In its reply brief, defendant argues that the discovery rule should be used only when the claims arise from an occupational disease with

the case at bar in that the plaintiff admitted knowing of his injury and its relation to his employment several years before filing his cause of action. This court cited *Urie* and its progeny for the proposition that the plaintiff's cause of action accrues when plaintiff knew or should have known of his injury and its cause. *Stokes,* 687 F.Supp. at 553.

Viewing the evidence presented to this court in the light most favorable to the plaintiffs, it is apparent that defendants' motion for summary judgment must fail. The court cannot conclude as a matter of law that either plaintiff knew of his injury and its relation to his employment. In an affidavit filed with this court, Mr. Paravecchio stated that he:

> had been to several audiologists, and in fact had had hearing aids prescribed. I cannot remember ever being questioned about my work history and, I assume that my decreased hearing had something to do with the fact that I was getting older.

(Plaintiffs' Exhibit 4, Affidavit of Joseph N. Paravecchio). Mr. Bechtholdt visited the Cheyenne Hearing Clinic in 1985 and again in 1986 for a hearing loss in his right ear which he attributed to an automobile accident. (Defendant's Exhibit C, Deposition of Elmer R. Bechtholdt). The diagnosis notes the hearing loss and states that the cause is "not immediately evident." *Id.* The affidavit of Dr. Bruce Smith, attached to plaintiff's memorandum in opposition as Exhibit 1, describes attributes of workers

similarly situated. The description does not deviate from the plaintiff's statements.

I have also observed, among railroad workers with a history of toxic noise exposure, and others, that the victims of occupational hearing loss often may not attribute their handicap to previous or current noise exposure. Because of the insidious nature of the injury, many of these workers may not even recognize the onset of any definite abnormality; and, since many of them work with and associate with other noise exposed workers, they simply consider their declining ability to hear and understand to be a social or age related phenomenon having nothing to do with their working environment.

The question of whether plaintiffs *should* have known they were injured is also before this court. The discovery rule "is not so inflexible as to require medical diagnosis" before a cause of action accrues. *Jones v. Maine Central R.R. Co.,* 690 F.Supp. 73, 74 (D.Me.1988). What the court must determine is whether the plaintiffs were armed with sufficient facts, more than three years before filing this action, with which reasonable persons could have protected themselves by seeking advice in the medical and legal community. *Kubrick,* 444 U.S. at 123, 100 S.Ct. at 360.

Plaintiffs acknowledge having a ringing or packed feeling in their ears immediately after their work shifts. The exhibits at-

---

worker's ability to hear at various frequencies. Thus, although the injury is traumatic, it was not necessarily recognized as an injury at the time of the exposure to the noise. The affidavit of Dr. Bruce Smith filed with the plaintiff's memorandum in opposition echoed this point. I have learned and observed that noise induced hearing loss is a condition whose symptoms may not always be incident specific. In other words, this may be a gradual insidious occupational injury whose symptoms are often no more distinctive or unique, to a layman, than those symptoms caused by other forms of hearing loss including, in some people, the aging process itself. The process of noise induced damage may involve a slowly progressive injury that gradually erodes the ability of a worker to hear at various frequencies.

(Plaintiffs' Exhibit 1, Affidavit of Dr. Bruce Smith).

In *Courtney v. Union Pacific Railroad,* 713 F.Supp. 305 (E.D.Ark.1989), the district court cited favorably the rule as adopted in *Stokes* and *Jones v. Maine Central R.R. Co.,* 690 F.Supp. 73 (D.Me.1988). That court reasoned that the "underlying purpose of limitations … would not be served by a rule where causes of action accrue solely upon knowledge of an injury…. It would be impossible to even choose a defendant, let alone commence an action, without having knowledge of both [injury and cause]."

The application of the discovery rule in hearing loss cases is consistent with all authority cited by counsel and the court.

tached to plaintiffs' memorandum in opposition[3] referred to this phenomenon as Temporary Threshold Shift, or TTS. Both men's experiences are consistent with the pattern of this condition ("tinnitus" or ringing in the ears, and "stuffiness" of the ear) outlined in plaintiffs' Exhibits 2A, 2B, and 3. Their depositions state that the symptoms would disappear by morning. (Plaintiffs' Exhibit 5; defendant's Exhibit B). The evidence indicates that inferring the plaintiffs had knowledge of their injury due to TTS symptoms may be fallacious. *See Smith v. States Marine International,* 864 F.2d 410 (5th Cir.1989). Among the plaintiffs' exhibits is the affidavit of Dr. David Lipscomb.

> In the course of my practice and research experience as an audiologist, and as a hearing conservation professional, I have learned that the phenomenon of TTS is a difficult impediment to the education and awareness of workers to the danger of noise. Because of the fact that symptoms of TTS tend to "disappear" by the next work day, noise exposed workers tend to believe that they are not experiencing any form of underlying or permanent hearing loss. Those of us who have been trained in the effects of noise are aware of the fact that TTS, while not permanent injury, is indicative of the underlying process of damage which, if not controlled, will eventually result in noise induced permanent threshold shift. Workers who have not been trained, or who do not understand this phenomenon, commonly believe just the opposite precisely because of the fact that TTS is, by definition, temporary.

The authorities cited by the defendants are not persuasive. *Jones,* 690 F.Supp. 73, concerned 27 claims for hearing loss caused by exposure to loud noise, and granted summary judgment against ten for filing after the statute of limitations had run. In each of the ten cases, the plaintiffs admitted knowledge of both their hearing loss

and its connection to their employment. When that court did not find specific admissions by the parties to both, summary judgment was denied. This was true in one case even though a plaintiff had seen his physician for his hearing problems 15 years prior to the filing of the action, but the physician had not informed him of the cause. *Id.* at 77. Another plaintiff consulted a physician more than three years prior to filing suit. The court found summary judgment inappropriate when the record did not demonstrate that the cause of his injury was communicated to him at that time. *Id.* at 76.

In *Courtney v. Union Pacific Railroad,* 713 F.Supp. 305 (E.D.Ark.1989), the plaintiff sought recovery under FELA for work related hearing loss. The plaintiff had a hearing examination identifying his injury as noise induced almost five years before filing his cause of action. The court found that this satisfied the injury and cause elements and held that the suit was time barred. From the evidence presented to this court, it is not apparent that the plaintiffs had such knowledge, or attributed it to exposure to loud noise.

The role of this court in deciding when summary judgment should issue is merely to determine whether there is no genuine issue as to any material fact. The medical evidence presented by the plaintiffs is uncontradicted. Other evidence presented suggests that the men believed that their eventual hearing loss was due to aging. In *Smith v. States Marine,* 864 F.2d at 413, the court heard facts strikingly similar to those in the case at bar. The court concluded "a trier of fact might reasonably conclude that Smith did not know the correlation between loud noise and hearing loss, or that Smith reasonably thought he knew already the cause of his ailment. The district court should not, therefore, have rendered a summary judgment." This court agrees.

---

**3.** Together with the affidavits of two physicians, the plaintiffs provide W. Melnick, *Industrial Hearing Conservation,* in THE HANDBOOK OF CLINICAL AUDIOLOGY 721 (J. Katz 3d ed. 1985), and D. Henderson, *Effects of Noise on Hearing,* in HEARING CONSERVATION IN INDUSTRY 9 (A. Feldman & C. Grimes ed. 1985). All accounts of these symptoms are consistent.

Therefore, IT IS ORDERED that the defendant's motion for partial summary judgment is DENIED.